UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------×

ANNIKA KRYSTYNA,

        *Plaintiff*,

        *v*.

BRONX-LEBANON HOSPITAL CENTER, and DR. NARAYAN SUNDARESAN, DR. SINDHAGHATTA VENKATRAM, DR. SRIDHAR CHILIMURI, and DR. DAVID JAKUBOWICZ, *individually*;

        *Defendants*.

---------------------------------------------------------------------×

**16 CV 5100**

**COMPLAINT**

    Plaintiff Annika Krystyna, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff Annika Krystyna ("Plaintiff" or "Dr. Krystyna") seeks damages and costs against Defendant Bronx-Lebanon Hospital Center ("Defendant Bronx-Lebanon" or the "Hospital") and Defendants Dr. Narayan Sundaresan, Dr. Sindhaghatta Venkatram, Dr. Sridhar Chilimuri, and Dr. David Jakubowicz, individually (hereinafter, all defendants are collectively referred to as "Defendants"), for discrimination based on her gender by subjecting her to a hostile work environment, treating her less well than her male counterparts and retaliating against her for raising complaints of harassment and discrimination. Defendants' conduct violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 to 14-151.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under NYCHRL, as the federal claims arise from the same set of operative facts as the state and local claims and form part of the same case or controversy.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to these claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Opportunity in Employment Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated March 31, 2016 relating to the discriminatory acts described in this Complaint. This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

5. Plaintiff respectfully requests a trial before a jury.

## PARTIES

6. Plaintiff Annika Krystyna ("Plaintiff" or "Dr. Krystyna"), at all times relevant hereto, was and is a resident of Westchester County in the State of New York.

7. Upon information and belief, at all times relevant hereto, Defendant Bronx-Lebanon was and is a corporation organized under the laws of the State of New York with offices located at 1276 Fulton Avenue, Bronx, New York 10456.

8. Upon information and belief, Dr. Narayan Sundaresan is a resident of New York County in the State of New York.

9. Upon information and belief, Dr. Sindhaghatta Venkatram is a resident of Westchester County in the State of New York.

10. Upon information and belief, Dr. Sridhar Chilimuri is a resident of Westchester County in the State of New York.

11. Upon information and belief, Dr. David Jakubowicz is a resident of Westchester County in the State of New York.

**STATEMENT OF FACTS**

12. Dr. Krystyna is a woman.

13. In and around October 2012, Dr. Krystyna began her employment with the Hospital as a physician in the neurosurgery group.

14. Dr. Krystyna, one of only a few female doctors in the neurosurgery group, immediately noticed that she was being treated differently than the male doctors in her group, both by her coworkers and by the Hospital's administration.

15. Dr. Krystyna's compensation for work at the Hospital comes from two sources: 1) directly from the Hospital payroll for her work as a General Physician, and 2) from Dr. Narayan Sundaresan's practice group, New York Neurosurgery, P.C.

16. One of the senior doctors in Dr. Krystyna's group, Dr. Sindhaghatta Venkatram, instructed Dr. Krystyna not to look him in the eye when speaking to him. This shocking display of sexism continued unabated until Dr. Krystyna began to be subjected to a barrage of retaliation for her complaints about this conduct.

17. This rule existed because Dr. Venkatram did not believe that, as a woman, Dr. Krystyna should look him directly in the eye.

3

18. Dr. Krystyna did not know of any male employee that was subjected to such a demeaning mandate.

19. Dr. Krystyna was also discriminated against on the basis of her gender by her supervising doctor, Dr. David Jakubowicz.

20. Dr. Jakubowicz manufactured patient care standards that only applied to Dr. Krystyna specifically because of her gender.

21. Dr. Jakubowicz reprimanded Dr. Krystyna for not following those rules; male doctors were not reprimanded for the same conduct.

22. Dr. Jakubowicz openly criticized Dr. Krystyna arbitrarily, including alleging that she misdiagnosed or otherwise mishandled patients for whom she was not responsible.

23. Dr. Jakubowicz repeatedly criticized Dr. Krystyna for errors she did not make and fabricated reasons to discipline her; for example, he complained to the Hospital about purported mismanagement of a patient by Dr. Krystyna on a day when she was not at the Hospital.

24. Upon learning that it was impossible for Dr. Krystyna to have been responsible for the alleged mismanagement, the complaint was dropped. No complaint was made against the male doctor responsible for the patient.

25. Dr. Jakubowicz freely told staff at the Hospital that he intended to fire Dr. Krystyna. On information and belief, this treatment was due to her gender and her resistance to his discriminatory rules.

26. Dr. Krystyna complained to Dr. Sridhar Chilimuri, the Hospital's Medical Director, about the mistreatment by Drs. Sundaresan, Venkatram, and Jakubowicz.

27. Dr. Chilimuri did nothing to stop the mistreatment and harassment and instead started limiting Dr. Krystyna's hours at the Hospital.

28. In and around April 2014, Dr. Krystyna formally complained, through counsel, to the Hospital about the gender discrimination she faced, as well as the retaliation she had experienced for raising issues of patient health and safety.

29. The Hospital took no substantive action in response, and the discriminatory treatment continued unabated.

30. After Dr. Krystyna made this complaint, the Hospital began a campaign of retaliation against her for doing so. For example:

   a. it drastically cut Dr. Krystyna's hours,
   b. it refused to allow her to use her accrued benefits or time off,
   c. it refused to cover her insurance costs,
   d. doctors continued to disfavor and harass her,
   e. it "investigated" her time worked, withheld pay, and shortchanged her hours, and
   f. it continues to deny Dr. Krystyna benefits and perquisites given to male doctors, such as a Hospital-issued cell phone.

31. In response to her complaints, Dr. Krystyna was told that she would be taken off Hospital payroll and that "there would be trouble" if she raised legal concerns.

32. Additionally, the senior doctors in Dr. Krystyna's practice group, including Dr. Sundaresan, began retaliating against her for complaining of their behavior by, among other things, drastically cutting her hours.

33. During Dr. Krystyna's first two (2) years of employment, she earned approximately two hundred and seventy thousand dollars ($270,000) annually.

34. After Dr. Krystyna's complaints, Defendants imposed new rules drastically limiting the hours Dr. Krystyna could work, resulting in a loss of fifty percent (50%) of her previous annual earnings in 2015.

35. Dr. Krystyna's male counterparts are not subjected to limitations on the amount of hours they can work or any of the other forms of retaliation or discrimination faced by Dr. Krystyna.

36. For more than two (2) years, the Hospital refused to allow Dr. Krystyna to use her accrued sick leave, vacation leave, and other paid time off.

37. Dr. Krystyna took several vacations and other leaves during this period that should have been compensated with accrued time off; they were not, and Dr. Krystyna went unpaid.

38. Dr. Krystyna's unpaid time amounts to tens of thousands of dollars.

39. Additionally, Hospital policy caps the amount of leave that employees can accrue. If an employee has accrued the maximum amount of leave, any additional leave that would be earned is lost.

40. As a result of the Hospital refusing to allow Dr. Krystyna to use her accrued leave, she was unable to accrue hundreds of hours of leave, as she had reached the maximum accruable amount.

41. This has resulted in Dr. Krystyna's losing hundreds of hours of accrued time.

42. Dr. Krystyna frequently requested to use her paid leave, but was denied nearly every time and forced to leave without any compensation.

43. In February 2016, Dr. Krystyna filed a charge with the EEOC alleging gender discrimination. Subsequent to filing that charge, the retaliation against her by the Hospital worsened.

44. Dr. Sundaresan's son handles Dr. Krystyna's administrative and payroll requests. He continues to effectuate Dr. Sundaresan's retaliation and treat her less well than her male colleagues by mishandling her pay, discouraging her from taking vacation, and attempting to charge her for administrative forms.

45. The Hospital regularly now submits delayed and/or inaccurate payroll for Dr. Krystyna, resulting in late paychecks that are often incorrect.

46. The Hospital now refuses to grant Dr. Krystyna approval to take vacation, while generally granting the requests of other doctors.

47. Dr. Krystyna is faced with numerous and ongoing administrative hurdles concerning her compensation and time off from work.

48. These steps taken by the Hospital were in retaliation for Dr. Krystyna's repeated complaints of illegal discriminatory activity.

49. Dr. Krystyna has suffered emotional distress, pain, and suffering from the ongoing harassment, as well as permanent damage to her career.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Gender Discrimination in Violation of the NYCHRL,**
**N.Y.C. Admin. Code § 8-101 *et seq*.**
**(Against Defendants)**

50. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 49 with the same force as though separately alleged herein.

51. The NYCHRL mandates that no employer discriminate against an employee in compensation or in terms, conditions, or privileges of employment on the basis of gender.

52. Defendants discriminated against Plaintiff because she is a woman; Defendants created restrictive rules solely for her, denied her privileges that her male counterparts received, and otherwise created an uncomfortable, hostile work environment for Plaintiff because of her gender.

53. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

54. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights under the NYCHRL, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

**SECOND CAUSE OF ACTION**
**Hostile Work Environment in Violation of the NYCHRL**
**(Against Defendants)**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of gender.

57. Defendants discriminated against Plaintiff by treating her less well than her male counterparts.

58. Plaintiff properly complained to Defendants about gender discrimination but was treated with increased hostility after doing so.

59. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

60. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of the NYCHRL**
**(Against Defendants)**

61. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 59 with the same force as though separately alleged herein.

62. NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

63. Plaintiff properly complained to Defendants about gender discrimination.

64. Defendants retaliated against Plaintiff by, *inter alia*, subjecting her to further alienation, refusing to grant her the privileges male employees received, and eliminating a sizeable amount of her work hours.

65. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages.

66. Defendants' retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**FOURTH CAUSE OF ACTION**
**Gender Discrimination in Violation of Title VII**
**(Against Defendant Bronx-Lebanon)**

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68. Title VII mandates that no employer discriminate against an employee in compensation or in terms, conditions, or privileges of employment on the basis of gender.

69. Defendant Bronx-Lebanon discriminated against Plaintiff because she is a woman; Defendant Bronx-Lebanon created restrictive rules solely for her, denied her privileges that her male counterparts received, and otherwise created an uncomfortable, hostile work environment for Plaintiff because of her gender.

70. As a direct and proximate consequence of Defendant Bronx-Lebanon's gender discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

71. Defendant Bronx-Lebanon's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights under Title VII, due to which Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

**FIFTH CAUSE OF ACTION**
**Hostile Work Environment in Violation of Title VII**
**(Against Defendant Bronx-Lebanon)**

72. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of gender.

74. Defendant Bronx-Lebanon discriminated against Plaintiff by treating her less well than her male counterparts.

75. Plaintiff properly complained to Defendant Bronx-Lebanon about gender discrimination but was treated with increased hostility after doing so.

76. As a direct and proximate consequence of Defendant Bronx-Lebanon's gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

77. Defendant Bronx-Lebanon's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (Against Defendant Bronx-Lebanon)

78. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79. Title VII prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within Title VII.

80. Plaintiff properly complained to Defendant Bronx-Lebanon about gender discrimination she faced in the workplace.

81. Defendant Bronx-Lebanon retaliated against Plaintiff by, *inter alia*, subjecting her to further alienation, refusing to grant her the privileges that male employees received, and eliminating a sizeable amount of her work hours.

82. As a direct and proximate consequence of Defendant Bronx-Lebanon's retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages.

83. Defendant Bronx-Lebanon's retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $2,000,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $2,000,000; and

C. For the third claim, actual damages to be determined at trial, but in no event less than $2,000,000;

D. For the fourth claim, actual damages to be determined at trial, but in no event less than $2,000,000;

E. For the fifth claim, actual damages to be determined at trial, but in no event less than $2,000,000; and

F. For the sixth claim, actual damages to be determined at trial, but in no event less than $2,000,000;

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 29, 2016

THE HARMAN FIRM, LLP

By: _____
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com

*Attorneys for Plaintiff*