UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------×

ANNIKA KRYSTYNA,

        *Plaintiff*,

  v.

BRONX-LEBANON HOSPITAL CENTER, NY
NEUROSURGERY P.C., NARAYAN SUNDARESAN,
KENNETH SUNDARESAN, SINDHAGHATTA
VENKATRAM, SRIDHAR CHILIMURI, *and* DAVID
JAKUBOWICZ, *individually*,

        *Defendants*.

-----------------------------------------------------------------------×

16 CV 5100

**FIRST AMENDED COMPLAINT**

Plaintiff Annika Krystyna, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff Annika Krystyna ("Plaintiff" or "Dr. Krystyna") seeks damages and costs against Defendants Bronx-Lebanon Hospital Center ("Bronx-Lebanon" or the "Hospital"), NY Neurosurgery P.C. ("NYN"), and Dr. Narayan Sundaresan, Kenneth Sundaresan, Dr. Sindhaghatta Venkatram, Dr. Sridhar Chilimuri, and Dr. David Jakubowicz, individually (hereinafter, all defendants are collectively referred to as "Defendants"), for discriminating against her based on her gender by subjecting her to a hostile work environment, treating her less well than her male counterparts, constructively terminating her employment, and retaliating against her for raising complaints of harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 14-151.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's Title VII claims.

3. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated March 31, 2016, relating to the discriminatory acts described in this Complaint. This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Plaintiff, at all times relevant hereto, was and is a resident of Westchester County in the State of New York.

8. Upon information and belief, at all times relevant hereto, Defendant Bronx-Lebanon was and is a corporation organized under the laws of the State of New York with offices located at 1276 Fulton Avenue, Bronx, New York 10456.

9. Upon information and belief, at all times relevant hereto, Defendant NYN was and is a corporation organized under the laws of the State of New York with offices located at 1148 Fifth Avenue, New York, New York 10128.

10. Upon information and belief, at all times relevant hereto, Defendant NYN was owned and controlled by Defendant Narayan Sundaresan.

11. Upon information and belief, Defendant Narayan Sundaresan is a resident of New York County in the State of New York.

12. Upon information and belief, Defendant Kenneth Sundaresan is a resident of New York County in the State of New York.

13. Upon information and belief, Defendant Venkatram is a resident of Westchester County in the State of New York.

14. Upon information and belief, Defendant Chilimuri is a resident of Westchester County in the State of New York.

15. Upon information and belief, Defendant Jakubowicz is a resident of Westchester County in the State of New York.

## STATEMENT OF FACTS

16. Dr. Krystyna is a woman.

17. In and around October 2012, Dr. Krystyna began her employment with the Hospital as a physician in the neurosurgery group.

18. Dr. Krystyna, one of only a few female doctors in the neurosurgery group, immediately noticed that she was being treated differently than the male doctors in her group, both by her coworkers and by the Hospital's administration.

19. Dr. Krystyna's compensation for her work at the Hospital comes from two sources: 1) directly from the Hospital payroll for her work as a General Physician, and 2) from Dr. Sundaresan's practice group, NYN.

20. One of the senior doctors in Dr. Krystyna's group, Dr. Venkatram, instructed Dr. Krystyna not to look him in the eye when speaking to him.

21. This shocking display of sexism continued unabated until Dr. Krystyna began to be subjected to a barrage of retaliation for her complaints about this conduct.

22. This rule existed because Dr. Venkatram did not believe that, as a woman, Dr. Krystyna should look him directly in the eye.

23. Dr. Krystyna did not know of any male employee that was subjected to such a demeaning mandate.

24. Dr. Krystyna was also discriminated against on the basis of her gender by her supervising doctor, Dr. Jakubowicz.

25. Dr. Jakubowicz manufactured patient care standards that only applied to Dr. Krystyna specifically because of her gender.

26. Dr. Jakubowicz reprimanded Dr. Krystyna for not following those rules; male doctors were not reprimanded for the same conduct.

27. Dr. Jakubowicz openly criticized Dr. Krystyna arbitrarily, including alleging that she misdiagnosed or otherwise mishandled patients for whom she was not responsible.

28. Dr. Jakubowicz repeatedly criticized Dr. Krystyna for errors she did not make and fabricated reasons to discipline her.

29. For example, Dr. Jakubowicz complained to the Hospital about purported mismanagement of a patient by Dr. Krystyna on a day when she was not at the Hospital.

30. Upon learning that it was impossible for Dr. Krystyna to have been responsible for the alleged mismanagement, the complaint was dropped. No complaint was made against the male doctor responsible for the patient.

31. Dr. Jakubowicz freely told staff at the Hospital that he intended to fire Dr. Krystyna.

32. On information and belief, this treatment was due to Dr. Krystyna's gender and her resistance to Dr. Jakubowicz's discriminatory rules.

33. Dr. Krystyna complained to Dr. Chilimuri, the Hospital's Medical Director, about the mistreatment by Drs. Sundaresan, Venkatram, and Jakubowicz.

34. Dr. Chilimuri did nothing to stop the mistreatment and harassment and instead started limiting Dr. Krystyna's hours at the Hospital.

35. In and around April 2014, Dr. Krystyna formally complained, through counsel, to the Hospital about the gender discrimination she faced, as well as the retaliation she had experienced for raising concerns of discrimination and issues of patient health and safety.

36. The Hospital took no substantive action in response, and the discriminatory treatment continued unabated.

37. After Dr. Krystyna made this complaint, the Hospital began a campaign of retaliation against her for doing so. For example:
   a. it drastically cut Dr. Krystyna's hours,
   b. it refused to allow her to use her accrued benefits or time off,
   c. it refused to cover her insurance costs,
   d. doctors continued to disfavor and harass her,
   e. it "investigated" her time worked, withheld pay, and shortchanged her hours, and
   f. it denied Dr. Krystyna benefits and perquisites given to male doctors, such as a Hospital-issued cell phone.

38. In response to her complaints, Dr. Krystyna was told that she would be taken off Hospital payroll and that "there would be trouble" if she raised legal concerns.

39. Additionally, the senior doctors in Dr. Krystyna's practice group, including Dr. Sundaresan, began retaliating against her for complaining of their behavior by, among other things, drastically cutting her hours.

40. During Dr. Krystyna's first two (2) years of employment, she earned approximately two hundred and seventy thousand dollars ($270,000) annually.

41. After Dr. Krystyna's complaints, Defendants imposed new rules drastically limiting the hours Dr. Krystyna could work, resulting in a loss of fifty percent (50%) of her previous annual earnings in 2015.

42. Dr. Krystyna's male counterparts are not subject to limitations on the amount of hours they can work or any of the other forms of retaliation or discrimination faced by Dr. Krystyna.

43. For more than two (2) years, the Hospital refused to allow Dr. Krystyna to use her accrued sick leave, vacation leave, and other paid time off.

44. Dr. Krystyna took several vacations and other leaves during this period that should have been compensated with accrued time off; they were not, and Dr. Krystyna went unpaid.

45. Dr. Krystyna's unpaid time amounts to tens of thousands of dollars.

46. Additionally, Hospital policy caps the amount of leave that employees can accrue: If an employee has accrued the maximum amount of leave, any additional leave that would be earned is lost.

47. As a result of the Hospital refusing to allow Dr. Krystyna to use her accrued leave, she was unable to accrue hundreds of hours of leave, as she had reached the maximum accruable amount.

48. This has resulted in Dr. Krystyna's losing hundreds of hours of accrued leave.

49. Dr. Krystyna frequently requested to use her paid leave, but was denied nearly every time and forced to take leave without any compensation.

50. In February 2016, Dr. Krystyna filed a charge with the EEOC alleging gender discrimination.

51. Subsequent to filing that charge, the retaliation against Dr. Krystyna by Defendants worsened.

52. Dr. Sundaresan's son, Defendant Kenneth Sundaresan ("Mr. Sundaresan"), who handled Dr. Krystyna's administrative and payroll requests, continued to effectuate Defendants' retaliation and treat her less well than her male colleagues by mishandling her pay, discouraging her from taking vacation, and attempting to charge her for administrative forms.

53. Dr. Krystyna receives two paychecks for her work at the Hospital, one from the Hospital and one from NYN.

54. Dr. Krystyna receives an IRS Form 1099 for her income earned from NYN.

55. The Hospital regularly now submits delayed and/or inaccurate payroll for Dr. Krystyna, resulting in late paychecks that are often incorrect.

56. The Hospital refused to grant Dr. Krystyna approval to take vacation, while generally granting the requests of other doctors.

57. Dr. Krystyna is faced with numerous and ongoing administrative hurdles concerning her compensation and time off from work.

58. These steps taken by the Hospital were in retaliation for Dr. Krystyna's repeated complaints of illegal discriminatory activity.

59. Upon information and belief, some of the administrative staff in Dr. Sundaresan's practice also work for NYN.

60. Dr. Krystyna has suffered emotional distress, pain, and suffering from the ongoing harassment, as well as permanent damage to her career.

61. After commencing this lawsuit, Defendants began permitting Dr. Krystyna to use some of her accrued time off.

62. In early April 2017, Mr. Sundaresan sent Dr. Krystyna a work schedule for the month of May 2017.

63. The schedule reassigned Dr. Krystyna from the night and weekend shifts that she usually worked to daytime hours that she had not previously worked for Defendants and that she was unable to work.

64. Dr. Krystyna informed Defendants that she would not be able to work the schedule as written.

65. Defendants refused to alter Dr. Krystyna's schedule.

66. As a result, Dr. Krystyna was not able to work for Defendants as of May 2017.

67. Defendants' refusal to issue Dr. Krystyna a workable schedule functionally terminated Dr. Krystyna's employment at the Hospital.

68. When Dr. Krystyna did not work as scheduled in May, 2017, Defendants notified her that her employment was officially terminated.

# CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against All Defendants)

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. The NYCHRL mandates that no employer discriminate against an employee on the basis of gender.

71. Defendants discriminated against Plaintiff because she is a woman; Defendants created restrictive rules solely for her, denied her privileges that her male counterparts received, and otherwise created an uncomfortable, hostile work environment for Plaintiff because of her gender.

72. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

73. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights under the NYCHRL, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL
### (Against All Defendants)

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. The NYCHRL prohibits employers from discriminating against an employee on the basis of gender.

76. Defendants constructively terminated Plaintiff's employment based on her gender by subjecting her to gender-based discrimination and harassment that created a work environment so hostile that a reasonable person would have been compelled to resign.

77. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

78. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### (Against All Defendants)

79. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 78 with the same force as though separately alleged herein.

80. The NYCHRL prohibits an employer from retaliating against an employee for complaining of discriminatory practices illegal within the NYCHRL.

81. Plaintiff properly complained to Defendants about gender discrimination.

82. Defendants retaliated against Plaintiff by, *inter alia*, subjecting her to further alienation, refusing to grant her the privileges male employees received, eliminating a sizeable amount of her work hours, and, ultimately, constructively terminating her employment.

83. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages.

84. Defendants' retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII
### (Against Defendant Bronx-Lebanon)

85. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

86. Title VII mandates that no employer discriminate against an employee in compensation or in terms, conditions, or privileges of employment on the basis of gender.

87. Defendant Bronx-Lebanon discriminated against Plaintiff because she is a woman; Defendant Bronx-Lebanon created restrictive rules solely for her, denied her privileges that her male counterparts received, and otherwise created an uncomfortable, hostile work environment for Plaintiff because of her gender.

88. As a direct and proximate consequence of Defendant Bronx-Lebanon's gender discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

89. Defendant Bronx-Lebanon's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights under Title VII, due to which Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

## FIFTH CAUSE OF ACTION
### Unlawful Termination in Violation of Title VII
### (Against Defendant Bronx-Lebanon)

90. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of gender.

92. Defendant Bronx-Lebanon constructively terminated Plaintiff's employment based on her gender by subjecting her to gender-based discrimination and harassment that created a work environment so hostile that a reasonable person would have been compelled to resign.

93. As a direct and proximate consequence of Defendant Bronx-Lebanon's gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

94. Defendant Bronx-Lebanon's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (Against Defendant Bronx-Lebanon)

95. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 94 with the same force as though separately alleged herein.

96. Title VII prohibits an employer from retaliating against an employee for complaining of discriminatory practices illegal within Title VII.

97. Plaintiff properly complained to Defendant Bronx-Lebanon about gender discrimination she faced in the workplace.

98. Defendant Bronx-Lebanon retaliated against Plaintiff by, *inter alia*, subjecting her to further alienation, refusing to grant her the privileges that male employees received, eliminating a sizeable amount of her work hours, and, ultimately, constructively terminating her employment.

99. As a direct and proximate consequence of Defendant Bronx-Lebanon's retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages.

100. Defendant Bronx-Lebanon's retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant Bronx-Lebanon.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, damages to be determined at trial;

B. For the second claim, damages to be determined at trial;

C. For the third claim, damages to be determined at trial;

D. For the fourth claim, damages to be determined at trial;

E. For the fifth claim, damages to be determined at trial;

F. For the sixth claim, damages to be determined at trial;

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 15, 2017

By: /s Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*